IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD ALLEN GOSNEY,

Plaintiff,

v.

JOSHUA LAWSON, in his individual capacity;
JULIE GIBSON, in her individual capacity; and
R. TURNER, in his individual capacity;

Defendants.

Case No. 6:25-cv-01312-JR

OPINION AND ORDER

---

RUSSO, Magistrate Judge:

Pro se plaintiff Donald Allen Gosney filed this action under 42 U.S.C § 1983 against defendants Joshua Lawson, Julie Gibson, and Russell Turner, current and retired employees of the Oregon Department of Corrections ("ODOC"). Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, defendants' motion is granted, and this case is dismissed.

## BACKGROUND

At all relevant times, Gosney was an adult in custody ("AIC") at the Oregon State Penitentiary, an ODOC facility. Lentz Decl. ¶¶ 4-5 (doc. 44); Gosney Decl. ¶ 13 (doc. 48). He has undergone four hip surgeries and experiences chronic hip pain. Gosney Decl. ¶¶ 13, 16 (doc. 48). To alleviate his pain, Gosney uses a "wedge pillow" and sleeps with his knees raised. *Id.* at ¶¶ 2, 16.

From January 19, 2025, through February 18, 2025, Gosney was housed in the Disciplinary Segregation Unit ("DSU"). Lentz Decl. ¶ 4 (doc. 44). During that time, he was approved by his ODOC medical provider to use a wedge pillow. Gibson Decl. ¶ 7 (doc. 42). However, Gosney did not have access to his wedge pillow for the one month time period in the DSU. Gosney Decl. ¶¶ 14-15 (doc. 48).

On the first day of Gosney's DSU placement, his personal property, including his wedge pillow, was collected and inventoried. Turner Decl. Ex. 106, at 1 (doc. 45).

On January 20, 2025, Gosney asked Gibson, the ODOC nurse assigned to DSU, to obtain a wedge pillow for him to use under his legs at night. Gibson Decl. ¶ 6 (doc. 42). Gibson informed Gosney that he needed to send a message to the DSU Property Corporal requesting that his wedge pillow be retrieved. *Id.* Gibson confirmed that Gosney was approved to have the wedge pillow as an assistive medical device, personally checked the clinic area for a wedge pillow, and called other nurses to check two other health units. *Id.* at ¶¶ 7-8. She then "went to the DSU property room and spoke to Turner, the assigned DSU Property Corporal, about returning Gosney's wedge pillow. *Id.*

at ¶ 9. Turner informed Gibson that the property had not yet come in, "but that he would watch for it."[1] *Id.*

After Gosney spoke with Gibson on January 20, 2025, he sent a message to Turner and Lawson, the Americans with Disabilities Act ("ADA") coordinator at the Oregon State Penitentiary. Turner Decl. ¶ 6 (doc. 45); Lawson Decl. ¶¶ 1, 5 (doc. 43). Lawson received the message on January 21, 2025, and reviewed and responded to it two days later. Lawson Decl. ¶¶ 5-6 (doc. 43). As the ADA coordinator, Lawson did not have access to AIC property, but he contacted Turner regarding Gosney's wedge pillow, who reassured Lawson that "he would look for the pillow at his first opportunity." *Id.* at ¶ 6.

On January 22, 2025, Gosney's property was moved to the main line property room and a property officer acknowledged receipt thereof. Turner Decl. Ex. 106, at 1 (doc. 45); Turner Decl. ¶ 7 (doc. 45).

On January 23, 2025, Turner spoke with Lawson about the wedge pillow and had just received a message from Gosney regarding the same. Turner Decl. ¶ 6 (doc. 45). He also "spoke with someone from medical about the wedge pillow [but could] not recall who." *Id.*

Turner organized messages for review based on the date he received them and the AIC's DSU intake date; however, he "missed or misplaced" Gosney's message due to a "process failure." *Id.* at ¶ 8. Turner explained that "sometimes a [message was] misplaced or inadvertently removed" due to the volume of communications he generally received but attested that his "mistake in not getting to Gosney's request was not intentional." *Id.*

---

[1] Gibson only worked one other shift in the DSU during the relevant period and heard nothing further about the wedge pillow until she received the grievance filed by Gosney on February 18, 2025. Gibson Decl. ¶ 10 (doc. 42).

Lawson received another message from Gosney on February 11, 2025, but due to limited staff capacity and needing to call out sick, he was unable to respond until February 25, 2025, at which time Gosney had already regained access to his wedge pillow. Lawson Decl. ¶ 7 (doc. 43).

On February 18, 2025, the day he was released from DSU and regained access to his wedge pillow, Gosney filed a grievance regarding the wrongful denial. Gibson Decl. ¶ 10 (doc. 42); Gosney Decl. ¶ 15 (doc. 48). Plaintiff experienced "unnecessary pain" and "difficulties with daily activities" until 30 days after he regained access to his wedge pillow. Gosney Decl. ¶¶ 14-15 (doc. 48).

On July 24, 2025, Gosney initiated this lawsuit. The dispositive complaint asserts three claims: (1) Eighth Amendment violation under 42 U.S.C. § 1983 against Gibson, (2) Eighth Amendment violation under 42 U.S.C. § 1983 against Turner, and (3) Eighth Amendment violation under 42 U.S.C. § 1983 against Lawson. Second Am. Compl. ¶¶ 37-63 (doc. 27).

On July 22, 2026, defendants filed the present motion.[2] The following day, the Court provided plaintiff with a "Summary Judgment Advice Notice," explaining this lawsuit's procedural posture and what was expected from plaintiff to survive summary judgment. Briefing was completed regarding that motion on September 3, 2026.

[2] The Court notes that defendants seek summary judgment as to claims raised across plaintiff's three complaints (initial and amended complaints) including those asserted under the Eighth and Fourteenth Amendments, and ADA. Defs.' Mot. Summ. J. 7-14 (doc. 41). In response, plaintiff "voluntarily agree[d] to dismiss Lawson as a defendant" and reiterated that he was no longer pursuing relief under the ADA. Pl.'s Resp. to Mot. Summ. J. 1-2 (doc. 47). Plaintiff's response also makes clear that any Fourteenth Amendment claim is duplicative of his Eighth Amendment claim. *See, e.g.*, *id.* at 11-12; *see also* *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (if a constitutional claim "is covered by a specific constitutional provision," it should not be analyzed under due process); *Roberts v. Gonzalez*, 2013 WL 4663882, *8 (C.D. Cal. Mar. 5), *adopted by* 2013 WL 4663551 (C.D. Cal. Aug. 29, 2013) (dismissing the plaintiff's duplicative Fourteenth Amendment claims: "The obligations of prison officials to take reasonable measures to guarantee the safety of prisoners and to provide adequate medical care to prisoners fall within the scope of the Eighth Amendment") (collecting cases).

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

## DISCUSSION

Defendants argue summary judgment is warranted because plaintiff cannot demonstrate an Eighth Amendment violation and, even so, qualified immunity attaches. Defs.' Mot. Summ. J. 1, 7-11 (doc. 41). Plaintiff asserts that disputed issues of material facts exist because there are inconsistencies in Gibson's and Turner's statements. Pl.'s Resp. to Mot. Summ. J. 3-4 (doc. 47). Plaintiff also points to Turner's inaction in opposing defendants' motion. *Id.* at 4-11.

To prevail under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the conduct complained of deprived him or her of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). It is undisputed that Gibson and Turner qualify as state actors for the purposes of § 1983. Gibson Decl. ¶¶ 1, 4 (doc. 42); Turner Decl. ¶ 1 (doc. 45).

Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). To determine whether a government actor is entitled to qualified immunity, the court evaluates, in no particular order, whether: (1) the alleged misconduct violated a right; and (2) that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## I. Whether Plaintiff's Rights Were Violated

The Eighth Amendment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prisoner claiming an Eighth Amendment violation must establish, both objectively and subjectively, that conditions of confinement are cruel and unusual. *Wilson v. Seiter*, 501 U.S. 294, 297-98 (1991). To satisfy the objective component, the plaintiff must allege a deprivation that qualifies as a "sufficiently serious" medical need. *Id.* at 298. "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Lolli v. Cnty. of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) (citations and internal quotations omitted).

To satisfy the subjective component, the plaintiff must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. *Farmer*, 511 U.S. at 834. Deliberate indifference in this context means that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference." *Id.* at 837. Only such indifference can offend "evolving standards of decency" in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Presuming there is sufficient evidence to satisfy the objective component of Gosney's Eighth Amendment claims, he failed to raise a genuine issue of material fact regarding the subjective component – specifically, whether Gibson and Turner were deliberately indifferent.

The record shows that Gibson knew of Gosney's need for a wedge pillow and acted reasonably to try to locate it for him. Gibson informed Gosney of the steps he needed to take to receive his wedge pillow. Gibson then checked a clinic area, other health units and with Turner looking for the wedge pillow. Turner reassured Gibson that he would look out for the wedge pillow. Turner was assigned to only one other DSU shift during Gosney's placement. Gibson did not disregard the risk to Gosney. She took reasonable steps to provide him with his medical device and stopped after receiving assurances from Turner. *Cf. McGuckin v. Smith*, 974 F.2d 1050, 1062 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (evidence did not support a finding of deliberate indifference where the officers were not responsible for a delay in the plaintiff's medical treatment).

Plaintiff asserts that several inconsistencies related to Gibson's testimony establish a genuine issue of material fact regarding whether she was deliberately indifferent; however, these asserted inconsistencies are either not present or immaterial. First, Gosney points to a summary of

his medical records as a reason to doubt Gibson's statements that she verified plaintiff's authorization. Gosney Decl. ¶ 5 (doc. 48). But the medical records summary and Gibson's statements suggest two separate practices as opposed to establishing an inconsistency. *See* Lentz Decl. Ex. 104, at 2 (doc. 44) (indicating that during the relevant placement in the DSU, "[r]equests for access to care [and] complaints would have been brought to [the] DSU RN and charted on this page [but] none [were] present."); Gibson Decl. ¶ 7 (doc. 42) (attesting to confirming Gosney's authorization to possess a wedge pillow).

Second, Gosney's assertion that "[n]o where in Turner's declaration does he mention Gibson contacting him" is inaccurate because Turner stated under penalty of perjury that he had "spoken to someone from medical about the wedge pillow." Gosney Decl. ¶ 7 (doc. 48); Turner Decl. ¶ 6 (doc. 45).

Third, the fact that Gibson and Gosney recount Gosney's statements slightly differently does not establish that Gibson did not complete the actions she attested to completing on January 20, 2025. *See Brit. Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952-53 (9th Cir. 1978) (an immaterial factual dispute does not bar summary judgment). In sum, Gosney has failed to raise a genuine issue of material fact regarding whether Gibson was deliberately indifferent to his medical needs.

Similarly, the record does not demonstrate that Turner was deliberately indifferent. Rather, his process failure is more akin to negligence. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (citation omitted) ("[m]ere negligence is insufficient for liability"). While evidence supports a finding that Turner knew of Gosney's need for the medical device, his mistake in misplacing the message does not demonstrate a disregard for Gosney's health. *Farmer*, 511 U.S. at 838 ("an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment").

Neither Gosney's assertion regarding the date stamp on the property pick-up form nor his theory regarding Turner's inaction counsel towards a different result. Turner attested to the property being "moved to the main line property room on January 22, 2025," and the property pick-up form corroborates this. Turner Decl. ¶ 7 (doc. 45); Turner Decl. Ex. 106, at 1 (doc. 45). That Turner notes process failures on more occasions than this one further supports the conclusion that Turner's mistake demonstrates a degree of negligence. Defendants' motion is granted for this reason alone.

## II. Whether the Right Was Clearly Established

A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation and internal quotations omitted). The dispositive inquiry is whether the state actor had "'fair warning' that his conduct deprived his victim of a constitutional right." *Id.* at 740 (citation omitted); *see also Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) ("[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate").

As addressed herein, defendants did not violate Gosney's constitutional rights. Nevertheless, even if a disputed issue of material fact existed concerning this issue, Gibson and Turner would be entitled to qualified immunity. Gibson only had two DSU shifts during Gosney's relevant DSU placement and neither her actions to locate Gosney's pillow nor her eventual acquiescence put her on notice of a potential constitutional violation. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). Likewise, there is no evidence that Turner refused to provide an

assistive medical device after learning of Gosney's request, and inquiries from his two colleagues did not create "fair warning" that his process failure deprived Gosney of his rights. *See id.*

**CONCLUSION**

For the reasons stated herein, defendants' Motion for Summary Judgment (doc. 41) is granted and this case is dismissed.

IT IS SO ORDERED.

DATED this 10th day of November, 2026.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge